**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| WORCESTER INTERFAITH, INC.; NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, INC., WORCESTER BRANCH; CASSANDRA BENSAHIH; JAMES BERRY; MARITZA CRUZ; HOLLI HILL; JESSENIA KOLACO; NELLY MEDINA; RUTH RODRIGUEZ-FAY; and DELIA VEGA,<br><br>       Plaintiffs,<br><br>       v.<br><br>CITY OF WORCESTER, MASSACHUSETTS; EDWARD M. AUGUSTUS, JR., in his official capacity as Worcester City Manager; NIKOLIN VANGJELI, in his official capacity as Worcester City Clerk; WORCESTER SCHOOL COMMITTEE; JOSEPH M. PETTY, in his official capacity as Mayor of the City of Worcester, City Councilor, and Chairman of the Worcester School Committee; DIANNA L. BIANCHERIA, LAURA CLANCEY, JOHN L. FOLEY, MOLLY O. MCCULLOUGH, JOHN F. MONFREDO, and TRACY O'CONNELL NOVICK, in their official capacities as members of the Worcester School Committee; WORCESTER BOARD OF ELECTION COMMISSIONERS; RICHARD DUFFY, KIMBERLY VANDERSPEK, WINIFRED OCTAVE, DANAAH MCCALLUM, and JOHN STEWART, in their official capacities as members of the Worcester Board of Election Commissioners; WORCESTER CITY COUNCIL; MORRIS A. BERGMAN, DONNA M. COLORIO, KHRYSTIAN E. KING, CANDY MERO-CARLSON, SARAI RIVERA, SEAN M. ROSE, GARY ROSEN, GEORGE J. RUSSELL, KATHLEEN M. TOOMEY, and MATTHEW E. WALLY, in their official capacities as City Councilors,<br><br>       Defendants. | Case No. 4:21-cv-40015-TSH |

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE

For the reasons stated herein, Plaintiffs[1] and Defendants[2] respectfully request that the Court enter the proposed Consent Decree ("Decree"), attached as Exhibit A to the parties' Joint Motion for Entry of Consent Decree, ECF No. 50-1 (the "Decree").

## INTRODUCTION

Plaintiffs—Hispanic/Latino/a and Black citizens of Worcester, Massachusetts and two community organizations made up of those individuals—commenced this action in February 2021, alleging that Worcester's entirely at-large plurality municipal electoral system for School Committee members violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301(a), and the Fourteenth and Fifteenth Amendments to the United States Constitution.[3]  The parties, through settlement discussions over the course of several months, have agreed to entry of the Decree as a necessary and appropriate resolution of Plaintiffs' claims.

The factual and legal basis for entry of the Decree is set forth in the Decree itself.  *See generally* ECF 50-1.  The Decree provides that starting with the 2023 municipal elections, the City will no longer use the challenged electoral system.  *See id.* ¶ Q.  That system will be replaced with

---

[1] Plaintiffs are Worcester Interfaith, Inc., National Association for the Advancement of Colored People, Inc., Worcester Branch, Cassandra Bensahih, James Berry, Maritza Cruz, Holli Hill, Jessenia Kolaco, Nelly Medina, Ruth Rodriguez-Fay, and Delia Vega.

[2] Defendants are City of Worcester, Edward M. Augustus, Jr., Nikolin Vangjeli, Worcester School Committee, Joseph M. Petty, Dianna L. Biancheria, Laura Clancey, John L. Foley, Molly O. McCullough, John F. Monfredo, Tracy O'Connell Novick, Worcester Board of Election Commissioners, Richard Duffy, Kimberly Vanderspek, Winifred Octave, Danaah McCallum, John Stewart, Worcester City Council, Morris A. Bergman, Donna M. Colorio, Khrystian E. King, Candy Mero-Carlson, Sarai Rivera, Sean M. Rose, Gary Rosen, George J. Russell, Kathleen M. Toomey, and Matthew E. Wally.

[3] The current system is "at-large," meaning that each of the six School Committee members is elected city-wide to represent the whole City, and "plurality," meaning that each voter is permitted up to six votes for distinct candidates, and the number of votes is tallied with the top vote-getters achieving election.

a new electoral system, chosen by the City Council from a pre-defined list of potential options specified in the Decree.[4]  *See id.* ¶¶ G.  The City Council has decided to refer discussion of the agreed-upon options to the City's Municipal & Legislative Operations Committee, which will hold public hearings over the next several weeks to inform, and solicit input from, the public concerning the available electoral system options.  After these hearings, the City Council will select the final electoral system.

## LEGAL STANDARD

"A consent decree 'embodies an agreement of the parties' and is also 'an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.'"  *Aronov v. Napolitano*, 562 F.3d 84, 90-91 (1st Cir. 2009) (quoting *Frew v. Hawkins*, 540 U.S. 431, 437 (2004)).  To be enforceable, courts require that, as a general matter, consent decrees must: (1) resolve a dispute within a court's subject-matter jurisdiction; (2) come within the general scope of the case made by the pleadings; and (3) further the objectives of the law upon which the complaint was based.  *See Frew*, 540 U.S. at 437; *see also Conservation Law Found.*, 989 F.2d at 59 (same).

A court must also "assure itself that the parties have validly consented; that reasonable notice has been given [to] possible objectors; that the settlement is fair, adequate, and reasonable; that the proposed decree will not violate the Constitution, a statute, or other authority; that it is consistent with the objectives of Congress; and, if third parties will be affected, that it will not be unreasonable or legally impermissible as to them."  *Durrett v. Housing Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *see also Aronov*, 562 F.3d. at 106-07 (consent decree must be reviewed to ensure that it is "fair, adequate, and reasonable").  In making this inquiry, the court's

---

[4] All of these potential options are acceptable electoral systems to the Plaintiffs.

"discretion is restrained by the clear policy in favor of encouraging settlements." *Durrett*, 896

F.2d at 604 (citation omitted).

## ARGUMENT

The parties respectfully submit that this Decree satisfies the threshold criteria set forth in

*Frew v. Hawkins*, 540 U.S. 431, 437 (2004). First, the Decree arises from, and will resolve, federal

claims within the Court's subject-matter jurisdiction arising under the United States Constitution

and federal statutory law. *See* 28 U.S.C. §§ 1331, 1343(a). The Decree also resolves claims within

the general scope of the case alleged by Plaintiffs in their Complaint (ECF No. 1), namely, the

alleged violations of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301(a), and the Fourteenth

and Fifteenth Amendments to the United States Constitution. In addition, the Decree will further

the objectives of the laws upon which Plaintiffs' claims are based by eliminating the challenged

electoral system in Worcester and replacing it with an electoral system that is compliant with

Section 2 of the Voting Rights Act.

The parties also respectfully submit that the Decree meets the further criteria that the First

Circuit has delineated in *Aronov v. Napolitano*, 562 F.3d 84, 90-91 (1st Cir. 2009) and *Durrett v.*

*Housing Authority of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990).[5]

First, the parties, after arms-length negotiation, validly consented to this Decree. *See*

*Durrett*, 896 F.2d at 604. Attorneys for Plaintiffs and Defendants negotiated the Decree's

---

[5] The parties largely based the terms and provisions of the Decree on a consent decree that was entered
with respect to a similar Voting Rights Act case that was brought against the city of Lowell,
Massachusetts. *See Huot v. City of Lowell*, Case No. 17–10895–WGY (D. Mass.), ECF No. 106. That
proposed consent decree was approved in 2019, with the Court stating that "[h]aving reviewed the
proposed decree, the Court finds that it is fair, adequate, and reasonable, that it will not violate the
Constitution, a statute, or other authority, and that it is consistent with the objectives of the Voting Rights
Act." *Id.* at ECF No. 105 (citing *Conservation Law Found. of New Eng., Inc. v. Franklin*, 989 F.2d 54, 58
(1st Cir. 1993)). Since approval, the Lowell consent decree has been successfully implemented, with the
City currently conducting its first elections under the new electoral system.

provisions over several months.  Plaintiffs consent to the terms of the Decree.  As to Defendants, the Worcester City Council—the municipal body with the authority to change Worcester's municipal electoral systems upon consent of the Massachusetts State Legislature, *see* Mass. Const. amend. art. 2, § 8—has been involved in the formulation of the Decree and voted to approve the Decree on October 12, 2021 after consultation with the City Solicitor's office in multiple Executive Sessions.

Second, the Decree provides notice and is not unreasonable or legally impermissible as to any third parties.  *See Durrett*, 896 F.2d at 604.  While no third parties have a right to any particular electoral system, the Decree nonetheless sets forth a timeline that allows the City Council to involve the public in the process for determining which replacement system will ultimately be chosen for municipal elections.  The City Council has already referred the agreed-upon options in the Decree to the Municipal & Legislative Operations Committee, which will hold public discussions regarding the agreed-upon options.   The public education component of the Decree is also specifically designed to ensure input and participation from all interested parties, including requirements that information be provided in Spanish and other languages spoken by many of Worcester's residents.  *See* ECF 50-1, ¶ P.  All of the replacement options are well within the power of the Defendants to adopt (subject to approval of the Legislature via a Home Rule Petition) and are compliant with governing law.  *See infra* p. 8.[6]

Third, the Decree is fair, adequate, and reasonable.  *See Durrett*, 896 F.2d at 604.  As provided in the Decree—which, as stated above, was negotiated at arms-length—the parties agree that their interests are served by "avoiding [further] unnecessary, costly, and divisive litigation."

---

[6] Furthermore, the Decree as filed for approval with this Court has been publicly discussed through several media outlets, and neither party is aware of any formal objections that have been raised in this Court.

*See* ECF 50-1, ¶ 17.  The parties also contend that it is "in the best interest of the residents of the City of Worcester" to "enter into this [Consent] Decree, as this [Consent] Decree sets forth a process for change that ensures an electoral system that is compliant with Section 2 and that is beneficial to all Worcester residents."  *Id.* ¶ 18.  As noted above, the Decree does not mandate that a specific electoral system be implemented.  Rather, the Decree provides a number of new electoral system options from which the City Council, as the elected representatives of the residents of Worcester, may choose, each of which the parties agree would satisfy Section 2 of the Voting Rights Act.  *See* Ex. A, ¶ G; *see also infra* pp. 6-

Finally, the Decree is consistent with the Constitution and Section 2 of the Voting Rights Act, and the objectives of Congress.  *See Durrett*, 896 F.2d at 604.  Specifically, the Decree allows the City Council to enact any of three types of new electoral systems, as described below:

**District.**  Worcester can implement an electoral system that includes only district-based seats (plus the Mayor, who is elected at-large).  The School Committee would be elected through six single-member districts (*i.e.*, one seat for each district).  *See* ECF 50-1, ¶ G.a.  This system requires that district lines be drawn so as to include at least two majority minority single member districts where Hispanic/Latino/a and Black residents together comprise a majority of the citizen voting age population—the maximum number of possible majority-minority districts that can presently be formed, based on the parties' expert analysis.  District-based systems such as this are broadly acceptable to courts as compliant with Section 2, and in fact are the default judicial remedy for apportionment or reapportionment.  *See Chapman v. Meier*, 420 U.S. 1, 18 (1975) (citing *Connor v. Williams*, 404 U.S. 549, 551 (1972)).

**Hybrid A.**  Worcester can implement a hybrid district/at-large system, which includes a mix of mostly single-member district-based seats and a smaller number of at-large seats (a "hybrid" system).  Under the Hybrid A option, the School Committee would consist of seven (7)

district-based seats and one (1) at-large seat.  *See* ECF 50-1, ¶ G.b.  This system requires that district lines be drawn so as to include at least two majority minority single member districts where Hispanic/Latino/a and Black residents together comprise a majority of the citizen voting age population—the maximum number of possible majority-minority districts that can presently be formed, based on the parties' expert analysis.  Such a hybrid system would also comply with Section 2, because they do not include so many at-large seats as to potentially dilute a minority population's equal opportunity to elect representatives of their choice.  *See Vecinos de Barrio Uno v. City of Holyoke*, 882 F. Supp. 9, 12 (D. Mass. 1995), *vacated on other grounds*, 72 F.3d 973 (1st Cir. 1995) (noting that a 7 district seats/2 at-large seats system complied with Section 2 based on its giving minority populations "rough proportionality" in their voting influence).

*Hybrid B.*  Worcester can implement an alternative hybrid system, the Hybrid B option, pursuant to which the School Committee would consist of six (6) district-based seats and two (2) at-large seats.  *See* ECF 50-1, ¶ G.c.  Like the other agreed-upon options, this system requires that district lines be drawn so as to include at least two majority minority single member districts where Hispanic/Latino/a and Black residents together comprise a majority of the citizen voting age population—the maximum number of possible majority-minority districts that can presently be formed, based on the parties' expert analysis.  Again, this hybrid system would also comply with Section 2.  *See Vecinos de Barrio Uno*, 882 F. Supp. At 12 (D. Mass. 1995).

Each potential electoral system provided for by the Decree, and thus the Decree itself, furthers Congress's objectives in the Voting Rights Act by providing minority voters the equal opportunity to elect representatives of their choice.  *See* 52 U.S.C. § 10301(a).  For any of the above options that requires that districts be drawn, the Decree sets out a process by which the City will retain an independent expert (mutually agreed to by Plaintiffs) who will engage in this line-drawing process, to optimally meet and protect both the Plaintiffs' interest in ensuring that the

Hispanic/Latino/a and Black population in Worcester has an equal opportunity to elect representatives of its choice, and the City's interest in ensuring that any adopted system is fully compliant with all relevant federal and state laws.  *See* ECF 50-1, ¶¶ R-S.  The Decree is also fully consistent with state law, in that it provides that once an electoral system is selected by the City Council, the Decree sets forth that the new electoral system is to be implemented through the Home Rule petition process in accordance with Massachusetts state law.  *See id.* ¶¶ L-M.[7]

Lastly, the Decree is consistent with the important public policy of encouraging the settlement of disputes, and is otherwise consistent with federal, state, and local laws.  Rather than engaging in potentially years more of intensive litigation, the parties have come together to arrive at a solution that protects the rights of both parties, allows public input into the ultimate electoral system to be adopted, and is beneficial to all of Worcester's residents.

## CONCLUSION

For the foregoing reasons, Plaintiffs and Defendants respectfully request that the Court enter the Decree, attached as Exhibit A to the parties' Joint Motion for Entry of Consent Decree, ECF No. 50-1.

Dated: October 22, 2021                    Respectfully submitted,


                                           */s/ Rebecca M. Lecaroz*
                                           Rebecca M. Lecaroz (BBO # 666860)
                                           Wayne F. Dennison (BBO # 558879)
                                           Brian M. Alosco (BBO # 693899)
                                           BROWN RUDNICK LLP
                                           One Financial Center

---

[7] The Decree also provides that Defendants shall pay Plaintiffs' attorneys' fees and costs in an amount to be negotiated by the parties following entry of the Decree, or determined by the Court if the parties are unable to reach agreement.  *See id.* ¶ X.  Such fees are authorized by governing law.  *See* 52 U.S.C. § 10310 (e) (award of fees in Voting Rights Act cases); 42 U.S.C. § 1988 (b) (award of fees in cases brought under 42 U.S.C. § 1983).

Boston, MA 02111
Telephone: (617) 856-8200
Fax: (617) 856-8201
rlecaroz@brownrudnick.com
wdennison@brownrudnick.com
balosco@brownrudnick.com

Oren M. Sellstrom (BBO # 569045)
LAWYERS FOR CIVIL RIGHTS
61 Batterymarch Street, Fifth Floor
Boston, MA 02110
Telephone: (617) 988-0608
Fax: (617) 482-4392
osellstrom@lawyersforcivilrights.org

*Counsel for Plaintiffs WORCESTER
INTERFAITH, INC.; NATIONAL
ASSOCIATION FOR THE ADVANCEMENT
OF COLORED PEOPLE, INC.,
WORCESTER BRANCH; CASSANDRA
BENSAHIH; JAMES BERRY; MARITZA
CRUZ; HOLLI HILL; JESSENIA KOLACO;
NELLY MEDINA; RUTH RODRIGUEZ-FAY;
and DELIA VEGA.*

/s/ Michael E. Traynor
Michael E. Traynor
City Solicitor
Wendy L. Quinn
Assistant City Solicitor
City Hall, Room 301
455 Main Street
Worcester, MA 01608
(508) 799-1161
quinnwl@worcesterma.gov

*Counsel for Defendants CITY OF
WORCESTER, MASSACHUSETTS;
EDWARD M. AUGUSTUS, JR., in his official
capacity as Worcester City Manager;
NIKOLIN VANGJELI, in his official capacity
as Worcester City Clerk; WORCESTER
SCHOOL COMMITTEE; JOSEPH M.
PETTY, in his official capacity as Mayor of
the City of Worcester, City Councilor, and
Chairman of the Worcester School
Committee; DIANNA L. BIANCHERIA,*

*LAURA CLANCEY, JOHN L. FOLEY, MOLLY O. MCCULLOUGH, JOHN F. MONFREDO, and TRACY O'CONNELL NOVICK, in their official capacities as members of the Worcester School Committee; WORCESTER BOARD OF ELECTION COMMISSIONERS; RICHARD DUFFY, KIMBERLY VANDERSPEK, WINIFRED OCTAVE, DANAAH MCCALLUM, and JOHN STEWART, in their official capacities as members of the Worcester Board of Election Commissioners; WORCESTER CITY COUNCIL; MORRIS A. BERGMAN, DONNA M. COLORIO, KHRYSTIAN E. KING, CANDY MERO-CARLSON, SARAI RIVERA, SEAN M. ROSE, GARY ROSEN, GEORGE J. RUSSELL, KATHLEEN M. TOOMEY, and MATTHEW E. WALLY, in their official capacities as City Councilors.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2021, I filed a copy of this document through the Electronic Case Filing System for filing and electronic service to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Rebecca M. Lecaroz*
Rebecca M. Lecaroz